**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

APEX BUILDING COMPANY, INC.,

      Defendant.

No. 23 Civ. 7838

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES OF AMERICA'S**
**MOTION TO ENTER THE PROPOSED CONSENT DECREE**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Telephone: (212) 637-2800

*Of Counsel:*
MÓNICA P. FOLCH
ZACHARY BANNON
Assistant United States Attorneys

The United States of America (the "Government"), on behalf of the U.S. Environmental Protection Agency ("EPA"), respectfully submits this memorandum of law in support of its motion to enter the proposed consent decree (Dkt. No. 3-1 (the "Consent Decree")) between the United States and defendant Apex Building Company, Inc. ("Apex").

## PRELIMINARY STATEMENT

The proposed Consent Decree resolves the Government's allegations that Apex violated the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2681 *et seq.*, by violating the lead-safe work-practice and record-keeping requirements of the Renovation, Repair, and Painting Rule (the "RRP Rule"), 40 C.F.R. Part 745, while performing renovations at New York City residential buildings known or presumed to contain lead-based paint. As detailed in the Government's complaint (Dkt. No. 1 ("Compl.")), in the course of renovating numerous New York City buildings with hundreds of apartments presumed to contain lead based paint, Apex failed to use mandatory safe work practices, allowing lead dust to be dispersed in the apartments beyond the renovation work area and into the common areas of buildings where families with children live. Apex and its employees also lacked the required certifications and training necessary to perform renovation work while preventing lead dust from contaminating apartments, common areas, and outside spaces. In addition, Apex violated its legal obligation to provide building owners and occupants information about the risks of lead exposure from renovation dust and debris. And Apex failed to keep mandatory records about the renovation work it performed in hundreds of apartments across New York City. Apex's violations of the RRP Rule created unnecessary risks of lead exposure for tenants of the buildings and workers at the renovation sites.

The proposed Consent Decree requires Apex to pay a $606,706 civil penalty (determined based on Apex's financial inability to pay more) and imposes injunctive relief designed to prevent

future violations. The Government published notice of the Consent Decree in the *Federal Register* and received no comments.

The Consent Decree readily satisfies the Second Circuit's test for approval of an enforcement settlement: it is "fair and reasonable" and "the public interest would not be disserved" by the injunctive relief contained in the Consent Decree. *S.E.C. v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (internal quotation marks omitted); *see also, e.g., United States v. Chestnut Petroleum Dist., Inc.*, No. 19 Civ. 3904 (PMH), 2020 WL 5505298, at *1 (S.D.N.Y. Sept. 11, 2020) (applying *Citigroup* standard to environmental consent decree). Accordingly, for the reasons stated below, the Government respectfully requests that the Court enter the Consent Decree as an order of the Court.

## BACKGROUND

### I.    Regulatory Background

In 1992, Congress enacted the Residential Lead-Based Paint Hazard Reduction Act of 1992 "to encourage effective action to prevent childhood lead poisoning by establishing a workable framework for lead-based paint hazard evaluation and reduction"; "to ensure that the existence of lead-based paint hazards are taken into account in the . . . renovation of homes and apartments"; and "to educate the public concerning the hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." 42 U.S.C. § 4851a. The Act amended TSCA by adding a new Title IV, entitled "Lead Exposure Reduction," 15 U.S.C. §§ 2681 *et seq.*

In 2008, the EPA promulgated the RRP Rule pursuant to TSCA Title IV, 15 U.S.C. § 2682, to establish training and certification requirements for renovation companies, to mandate lead-safe work practices for compensated renovations in most buildings known or presumed to contain lead paint, and to ensure that owners and occupants of those buildings understand the risks of lead exposure. Compl. ¶ 14. Among other things, the RRP Rule requires "[f]irms that perform

2

renovations for compensation . . . to apply to EPA for certification to perform renovations," 40 C.F.R. § 745.89(a)(1); requires renovations to be directed by "certified renovators" trained in lead-safe work practices, *id.* §§ 745.81(a)(3), 745,89(d)(2), & 745.90(a); and requires the use of specific work practices, such as closing off entire work areas by sealing doors and closing windows and "clean[ing] . . . work area[s] until no dust, debris or residue remains" after a renovation has been completed, *id.* §§ 745.85(a)(2) & (a)(5).

The RRP Rule also requires renovation firms to inform individuals affected by renovation work of the risks of lead exposure. Renovators must provide owners and occupants of housing with a pamphlet titled *Renovate Right: Important Lead Hazard Information for Families, Child Care Providers, and Schools* before beginning renovation work to inform them of basic facts regarding the effects of lead poisoning as well as precautions that residents can take when their homes are being renovated. 40 C.F.R. §§ 745.81(b) & 745.84(a). Renovators must also post signs "clearly defining the work area and warning occupants and other persons not involved in renovation activities to remain outside of the work area." *Id.* § 745.85(a)(1).

Finally, the RRP Rule imposes recordkeeping requirements. *See, e.g.*, 40 C.F.R. § 745.84(a)(1) (requiring renovation firm to obtain written acknowledgement that owner o property received *Renovate Right* pamphlet); *id.* § 745.86(b)(6) (requiring documentation that a certified renovator was assigned to a project and provided on-the-job training to other workers). Firms must "retain and, if requested, make available to EPA all records necessary to demonstrate compliance" with the RRP Rule. *Id.* §§ 745.86(a) & (b).

Violation of the RRP Rule is a prohibited act under TSCA, 15 U.S.C. § 2689, and constitutes a violation of that statute. TSCA provides federal district courts with jurisdiction to restrain any violation of acts prohibited under 15 U.S.C. § 2689, restrain persons from taking

actions prohibited by TSCA's lead-based paint regulations, and to compel the taking of actions required under TSCA. 15 U.S.C. § 2616(a)(1)(A)-(C). In addition, TSCA imposes liability for civil penalties for committing acts prohibited under 15 U.S.C. § 2689, to be assessed by EPA in an administrative proceeding in an amount up to $46,989 per violation per day. *See* 15 U.S.C. § 2615(a); *see also* 88 Fed. Reg. 986, 989 (Jan. 6, 2023) (setting penalty amount).

## II.    Allegations of the Complaint

As alleged in the Government's complaint, Apex was a general contractor on several distinct renovation projects in New York City, involving multiple residential buildings and hundreds of apartments that were constructed between 1901 and 1936 and therefore subject to the requirements of the RRP Rule. Compl. ¶¶ 28-33.

In response to an unsafe work practices complaint, the New York City Department of Health and Mental Hygiene ("DOHMH") conducted an inspection of an Apex worksite at 76 Grove Street in Brooklyn. *Id*. ¶¶ 29, 34-37. DOH inspectors saw visible dust from ongoing construction in public hallways on the first and third floors of the building from ongoing demolition work. *Id.* ¶ 34. Dust samples taken from the site revealed lead concentrations that exceeded federal and local lead hazard standards. *Id.* ¶ 35. After being informed of these issues by DOH, EPA inspectors conducted an inspection of the worksite on September 7, 2017. *Id.* ¶ 43.

In addition to the unsafe work practices identified by DOHMH at 76 Grove Street, EPA determined that Apex also lacked required certifications, failed to train its workers on lead-safe work practices, and failed to inform the building owner and occupants of the risks of lead poisoning during that renovation. *Id.* ¶¶ 38-42. When EPA informed Apex of these deficiencies, Apex provided inaccurate information about its RRP Rule compliance. *Id.* ¶¶ 43-48. Apex also violated the RRP Rule at four other renovation projects involving hundreds of apartments subject to the RRP Rule. *Id.* ¶¶ 49-54. As alleged, at each of these projects, Apex failed to assign certified

4

renovators, failed to provide on-the-job lead safety training to workers, failed to post signs clearly defining its work area and warning occupants to remain outside of the work area at the renovation projects. *Id.* These alleged violations occurred at low-income residential properties, where tenants are already disproportionately burdened by other environmental hazards. *Id.* ¶ 5.

## III.    The Proposed Consent Decree

The Consent Decree resolves the civil claims alleged in the complaint against Apex. *See* Consent Decree ¶ 66. Apex and its principals, Robert Horsford and Lee Brathwaite, together referred to in the Consent Decree as the "Apex Parties," are bound by the Consent Decree, along with their successors, assigns, or any firms owned or controlled by them. *See id.* ¶¶ 8, 10, 15. The Consent Decree will be in effect for five years years from the date the Court enters them, provided that the company has satisfied its requirements. *Id.* ¶¶ 80-82.

The Consent Decree requires Apex to pay $606,706 as a civil penalty. The penalty amount has been set based on an assessment of Apex's financial ability to pay conducted by a qualified analyst. *Id.* ¶¶ 16-23. Payments are to be made in five installments, as set forth in the schedule attached to the Consent Decree as Exhibit B. *Id.* ¶16, Ex. B.

The Consent Decree also imposes injunctive relief on Apex to ensure its compliance with the RRP Rule, as well as the compliance of any renovation firm the Apex Parties control or come to control. Among other things, the Consent Decree requires Apex to:

- Comply with the RRP Rule, including by utilizing the Renovation Checklist attached to the Consent Decree as Exhibit C, when performing renovations at covered worksites and ensure that contractors and subcontractors also comply with the rule.

- Appoint a compliance officer to ensure the firm's compliance with the RRP Rule.

- Notify EPA prior to performing renovations by submitting the Notification Checklist attached to the Consent Decree as Exhibit C.

- Submit annual reports to EPA outlining the renovation work it had completed in the preceding year and providing information confirming their compliance with the RRP Rule.

Consent Decree ¶¶ 24-28, Ex. C. Further, the Consent Decree requires Apex to conduct tenant and worker safety information sessions to mitigate potential harms it caused. *Id.* ¶¶ 29-30.

Additionally, as part of the Consent Decree, Apex admits, acknowledges, and accepts responsibility for certain facts related to this matter. *Id.* ¶ 14.

## IV.    Public Comment

Pursuant to 28 C.F.R. § 50.7, the Government published notice of the lodging of the Stipulation and Order in the *Federal Register* on September 11, 2023, and accepted public comments for a 30-day period. *See* Notice of Lodging of Proposed Consent Decree Under the Toxic Substances Control Act, 88 Fed. Reg. 62395 (September 11, 2023). The Government received no public comments.

## ARGUMENT

## I.    The Standard for Approval of a Proposed Stipulation and Order Resolving Civil Enforcement Claims

The Second Circuit has held that a court should approve a consent decree resolving civil enforcement claims where the decree is "fair and reasonable." *Citigroup*, 752 F.3d at 294; *accord Chestnut Petroleum Dist., Inc.*, 2020 WL 5505298, at *1 (applying *Citigroup* standard to environmental consent decree); *In re Tronox Inc.*, No. 14 Civ. 5495 (KBF), 2014 WL 5825308, at *8-*9 (S.D.N.Y. Nov. 10, 2014) (same); *United States v. IBM Corp.*, No. 14 Civ. 936 (KMK), 2014 WL 3057960, at *1, *5 (S.D.N.Y. July 7, 2014) (same). Where, as in this case, a settlement imposes an injunction, the Court must additionally make sure that the "'public interest would not be disserved' by the issuance of [the] permanent injunction." *Citigroup*, 752 F.3d at 294 (quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)).

In assessing whether a settlement is "fair and reasonable," the Court should consider at least four factors:

> (1) the basic legality of the [settlement]; (2) whether the terms of the [settlement], including its enforcement mechanism, are clear; (3) whether the [settlement] reflects a resolution of the actual claims in the complaint; and (4) whether the [settlement] is tainted by improper collusion or corruption of some kind.

*Citigroup*, 752 F.3d at 294-95 (internal citations omitted). "The primary focus of the inquiry . . . should be on ensuring the consent decree is procedurally proper, . . . taking care not to infringe on [the Government's] discretionary authority to settle on a particular set of terms." *Id.* at 295; *accord Tronox*, 2014 WL 5825308, at *8; *IBM Corp.*, 2014 WL 3057960, at *2.  Likewise, in considering whether the injunction disserves the public interest, the Court should not intrude on the Government's "decisions on discretionary matters of policy." *Id.* at 297.

Both the "fair and reasonable" test and the "public interest" test reflect the "'strong federal policy favoring the approval and enforcement of consent decrees.'" *Id.* at 293 (quoting *S.E.C. v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)). "Absent a substantial basis in the record for concluding that the proposed consent decree does not meet [the 'fair and reasonable' and public interest] requirements," the district court should enter the order. *Citigroup*, 752 F.3d at 294; *accord Tronox*, 2014 WL 5825308, at *8; *IBM Corp.*, 2014 WL 3057960, at *1.

## II.    The Consent Decree Is Fair and Reasonable, and Its Injunctive Relief Is in the Public Interest

The four factors identified in *Citigroup* for determining whether a consent decree is fair and reasonable are each satisfied here. First, there is no dispute as to the "basic legality" of the Consent Decree. *Citigroup*, 752 F.3d at 294. A consent decree "satisfies this factor so long as it is within the Court's authority to enter the consent decree and within [the Government's] authority to enforce it." *IBM Corp.*, 2014 WL 3057960, at *2; *accord Tronox*, 2014 WL 5825308, at *9. Here, the Court has authority to enter the Consent Decree pursuant to TSCA, which authorizes

7

equitable relief. *See* 15 U.S.C. § 2616(a); *see generally Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 291-92 (1960) (interpreting statutory language "restrain" in the context of governmental enforcement lawsuit to authorize courts to "provide complete relief in light of the statutory purposes"); *see also, e.g., Local. No. 93, Int'l Ass'n of Firefighters*, 478 U.S. 501 (1986) (court may enter consent decree that "spring[s] from and serve[s] to resolve a dispute within the court's subject-matter jurisdiction").

The second factor identified in *Citigroup*—"whether the terms of the decree, including its enforcement mechanism, are clear," 752 F.3d at 295—is likewise satisfied. The key terms of the Consent Decree are straightforward. *See Tronox*, 2014 WL 5825308, at *9 ("[T]he terms of the decree, and its enforcement mechanism, are clearly stated in the Settlement Agreement"); *IBM Corp.*, 2014 WL 3057960, at *3 ("By 'clear,' the Second Circuit appears to mean that the decree properly defines its key provisions." (internal quotation marks omitted)). Apex's obligation to pay a civil penalty and the injunctive relief imposed on Apex are clearly defined in the Consent Decree, as are other relevant provisions.

The third factor—"whether the consent decree reflects a resolution of the actual claims in the complaint," *Citigroup*, 752 F.3d at 295—is also met here. The Consent Decree expressly resolves the RRP Rule claims brought against Apex in the complaint. *See IBM Corp.*, 2014 WL 3057960, at *3 (finding that where settlement provided relief sought by the complaint, the settlement agreement satisfied third *Citigroup* factor).

The fourth factor—"whether the consent decree is tainted by improper collusion or corruption of some kind," *Citigroup*, 752 F.3d at 295—is likewise satisfied here. The Consent Decree is the result of arm's-length negotiation between parties and there is nothing to suggest that improper collusion or corruption of any kind tainted the negotiation process in this case.

Finally, the injunctive relief in the Consent Decree does not disserve the public interest. As described above, the Consent Decree includes injunctive requirements designed to ensure that Apex complies with the RRP Rule moving forward and to mitigate the risk of harm associated with renovations in buildings known or presumed to contain lead paint. This relief is well targeted to address the conduct described in the claims and to ensure ongoing compliance.

## **CONCLUSION**

For the foregoing reasons, the Court should enter the Consent Decree.

Dated: October 31, 2023
     New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

By:    */s/ Mónica Folch*
     MÓNICA P. FOLCH
     ZACHARY BANNON
     Assistant United States Attorney
     86 Chambers Street
     New York, New York 10007
     Telephone: (212) 637-2800
     Email: monica.folch@usdoj.gov
            zachary.bannon@usdoj.gov