**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      Plaintiff,

               v.

APEX BUILDING COMPANY, INC.,

      Defendant.

23 Civ. 7838

**<u>CONSENT DECREE</u>**

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ............................................................................ 4
II.     APPLICABILITY ............................................................................................... 4
III.    ADMISSIONS ..................................................................................................... 5
IV.    DEFINITIONS .................................................................................................... 6
V.     CIVIL PENALTY ................................................................................................ 8
VI.    INJUNCTIVE RELIEF ...................................................................................... 10
VII.   REPORTING REQUIREMENTS ....................................................................... 18
VIII.  STIPULATED PENALTIES ............................................................................. 20
IX.    FORCE MAJEURE ............................................................................................ 22
X.     DISPUTE RESOLUTION .................................................................................. 24
XI.    INFORMATION COLLECTION AND RETENTION ........................................ 26
XII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ............................ 28
XIII.  COSTS ............................................................................................................... 30
XIV.  NOTICES ........................................................................................................... 30
XV.   EFFECTIVE DATE ........................................................................................... 31
XVI.  RETENTION OF JURISDICTION ................................................................... 31
XVII. MODIFICATION ............................................................................................... 32
XVIII. TERMINATION ................................................................................................ 32
XIX.  PUBLIC PARTICIPATION .............................................................................. 33
XX.   SIGNATORIES/SERVICE ................................................................................ 33
XXI.  INTEGRATION ................................................................................................. 34
XXII. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION .............................. 34
XXIII. FINAL JUDGMENT .......................................................................................... 34

1.     WHEREAS, plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint concurrently with this Consent Decree, alleging that defendant Apex Building Company, Inc. ("Apex" or "Defendant"), violated Section 409 of the Toxic Substances Control Act (the "Act"), 15 U.S.C. § 2689, and the Renovation, Repair, and Painting Rule (the "RRP Rule"), 40 C.F.R. part 745, subpart E;

2.     WHEREAS, the complaint alleges that, at numerous renovation projects at residential properties in and around New York City, Defendant violated the RRP Rule's certification and training requirements, lead-safe work practice requirements, warning and notice requirements, and recordkeeping requirements;

3.     WHEREAS, Robert Horsford and Lee Brathwaite, the principals of Apex, agree to enter into this Consent Decree in their personal capacity to provide the relief specified herein;

4.     WHEREAS, the Parties recognize, ~~and the Court by entering this Consent Decree finds,~~ that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties; and the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree is fair, reasonable, and in the public interest.

5.     WHEREAS, the United States has determined that Apex has documented an inability to pay the full civil penalty for which it otherwise would be liable for the violations alleged in the Complaint, and therefore, solely because of that documented inability to pay, the United States is prepared to settle for a lower amount reflective of its ability to pay.

6.     NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 17 of the Act, 15 U.S.C. § 2616, and over the Parties.  Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because Apex is incorporated and has its principal place of business in this District, and because the complaint alleges that Apex violated TSCA and the RRP Rule within this District.

8.    For purposes of this Decree, or any action to enforce this Decree, Apex, Brathwaite, and Horsford (the "Apex Parties") consent to the Court's jurisdiction over this Decree and any such action and over the Apex Parties and consent to venue in this judicial district.

9.    For purposes of this Consent Decree, the Apex Parties agree that the Complaint states claims upon which relief may be granted pursuant to Section 409 of the Act.

## II.    APPLICABILITY

10.    The obligations of this Consent Decree apply to and are binding upon the United States, and upon the Apex Parties and any successors, assigns, or other entities or persons otherwise bound by law.

11.    No transfer of ownership or operation of Defendant, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Apex Parties of their obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, the Apex Parties shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States Attorney for the Southern District of New York, in accordance with Section XIV (Notices).  Any attempt to transfer ownership or

operation of Defendant without complying with this Paragraph constitutes a violation of this Decree.

12.    The Apex Parties shall provide a copy of this Consent Decree to all officers, employees, agents, and entities whose duties might reasonably include compliance with any provision of this Decree.  In addition, the Apex Parties shall provide a copy of Exhibit A to any contractor or subcontractor retained to perform work required under this Consent Decree.  The Apex Parties shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

13.    In any action to enforce this Consent Decree, the Apex Parties shall not raise as a defense the failure by any of their officers, directors, employees, agents, contractors or subcontractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.    ADMISSIONS

14.    Defendant admits, acknowledges, and accepts responsibility for the following:

a.    Between 2015 and 2021, Apex was a general contractor conducting renovation work on at least five distinct renovation projects, involving 21 apartment buildings and approximately 823 apartments, in New York City.  Each of these buildings was constructed before residential use of lead-based paint was prohibited by the federal government in 1978 and thus is presumed to contain lead-based paint.

b.    Between November 26, 2015, and July 1, 2016, Apex performed renovation work covered by the RRP Rule without the firm certification required by the RRP Rule as a precondition to conducting such work.

c.    Apex also violated other provisions of the RRP Rule on numerous occasions at the renovations projects it undertook between 2015 and 2021, including:

(1)    During a renovation that took place in 2016 and 2017 at 76 Grove Street in Brooklyn:

(a)    Apex failed to adequately contain construction dust, including dust containing lead in excess of levels permitted under the RRP Rule.

5

(b)    Apex failed to assign a certified renovator to oversee the project in violation of the RRP Rule.

(c)    Apex failed to provide on-the-job lead safety training to workers in violation of the RRP Rule.

(d)    Apex failed to post signs clearly defining its work area and warning occupants and other persons not involved in renovation activities to remain outside of the work area in violation of the RRP Rule.

(e)    Apex failed to provide a lead-hazard information pamphlet to the owner or occupants of the building before commencing work in violation of the RRP Rule.

(2)    During renovations that took place at various other addresses in Manhattan and the Bronx between 2015 and 2021, including from 2016 to 2019 at 400 Manhattan Avenue; from 2017 to 2019 at 1690 and 1700 Longfellow Avenue; from 2018 to 2021 at 353 Ford Street, 355 Ford Street, and 365 Ford Street in the Bronx known as Twin Parks; and from 2018 to 2021 at 1373 Franklin Avenue, 1377 Franklin Avenue, 1381 Franklin Avenue, 1390 Franklin Avenue, 1392 Franklin Avenue, 1394 Franklin Avenue, 1139 Nelson Avenue, 1144 Nelson Avenue, 1184 Nelson Avenue, 125 West 166th Street, 130 West 166th Street, 134 West 166th Street, 1085 Anderson Avenue, and 631 Jefferson Place in the Bronx known as Highbridge:

(a)    Apex failed to ensure that a certified renovator regularly directed work being performed at these projects and to provide on-the-job training for Apex's other workers, in violation of the RRP Rule.

(b)    Apex failed to maintain documentation showing that it provided lead-hazard information pamphlets to the owners or occupants of the buildings or that it had posted warning signs in the buildings, in violation of the RRP Rule.

## IV.   DEFINITIONS

15.    Terms used in this Consent Decree that are defined in the Act or in the RRP Rule have the meanings assigned to them in the Act or the RRP Rule, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a. "Additional Apex Renovation Firm" means any Firm other than Apex that is more than 50% owned, or otherwise controlled, by an Apex Party.

b. "Apex" or "Defendant" means defendant Apex Building Company, Inc.

c. "Apex Parties" means Apex, Brathwaite, and Horsford.

d. "Certified Contractor" means a contractor who has been certified as a firm in accordance with 40 C.F.R § 745.89 and whose certification is in effect throughout his/her involvement with a Renovation.

e. "Certified Firm" means a Firm that has been certified in accordance with 40 C.F.R § 745.89 and for which the certification is in effect throughout the time of its involvement with a Renovation.

f. "Certified Renovator" means a Renovator who has been certified in accordance with 40 C.F.R. § 745.90(a).

g. "Certified Subcontractor" means a Subcontractor that has been certified as a firm in accordance with 40 C.F.R § 745.89 and whose certification is current throughout his/her involvement with a Renovation.

h. "Child-Occupied Facility" has the same meaning as set forth in 40 C.F.R. § 745.83.

i. "Complaint" means the complaint filed by the United States in this action.

j. "Consent Decree" or "Decree" means this Decree and all appendices attached hereto.

k. "Contractor" or "Subcontractor" means a Firm that performs any portion of work that constitutes Renovation as a contractor or subcontractor of Apex or an Additional Apex Renovation Firm.

l. "Covered Work Site" shall mean Target Housing or a Child-Occupied Facility.

m. "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of New York.

n. "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

o. "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

p.  "Effective Date" means the definition provided in Section XV.

q.  "Firm" has the same meaning as set forth in 40 C.F.R. § 745.83.

r.  "Interest" means interest pursuant to 28 U.S.C. § 1961.

s.  "Paragraph" means a portion of this Decree identified by an Arabic numeral.

t.  "Parties" means the United States and Defendant.

u.  "Renovator" has the same meaning as set forth in 40 C.F.R. § 745.83.

v.  "Renovation" has the same meaning as set forth in 40 C.F.R. § 745.83.

w.  "Section" shall mean a portion of this Decree identified by a roman numeral.

x.  "Target Housing" has the same meaning as set forth in 40 C.F.R. § 745.103.

y.  "United States" shall mean the United States of America, acting on behalf of EPA.

## V.    CIVIL PENALTY

16.    Defendant shall pay the sum of $606,706 as a civil penalty, plus interest as described in this Paragraph. This payment shall be made in five annual payments as set forth in Exhibit B to this Consent Decree, with the first payment due 30 Days after the Effective Date and subsequent payments due annually thereafter.  Defendant shall include with the first payment an additional amount for interest accrued at the rate of 3.5% per year on the total payment amount from the Date of Lodging through the date of payment. Defendant shall include with each subsequent payment an additional amount for interest accrued at the rate of 3.5% per year on the unpaid balance from the date of the previous payment through the date of the payment.

17.    Defendant shall pay the civil penalty by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the United States Attorney's Office for the Southern District of New York after the Effective Date.  The payment instructions provided by the United States Attorney's Office ("USAO") will include a

Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.

18.     At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to EPA in accordance with Section XIV; and (iii) to the United States via email or regular mail in accordance with Section XIV.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States of America v. Apex Building Company, Inc.* and shall reference the civil action number and CDCS Number and DOJ case number 90-5-2-1-12388.

19.     Defendant may make any payment prior to its due date, but must contact the USAO in advance for a determination regarding the amount of interest to be included with the payment. If any installment payment includes an overpayment, the amount of the overpayment will be applied to the remaining principal.

20.     If Defendant fails to make any payment required under Paragraph 16 by the due date, the Government may send Defendant a notice of late payment.  If Defendant fails to make the payment and to pay all interest and stipulated penalties owed within 30 days of receipt of the notice, all remaining payments and all accrued interest will be due immediately. Interest will continue to accrue on any unpaid amounts until Defendant pays the total amount due. Interest required under this Paragraph is in addition to any stipulated penalties owed under Section VIII.

21.     If Defendant becomes the subject of a proceeding under the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all remaining payments and accrued interest will be due immediately. Interest will continue to accrue on any unpaid amounts until Defendant pays the total amount due. Interest required under this Paragraph is in addition to any stipulated penalties owed under Section VIII.

22.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

23.     Defendant acknowledges that the amount of the civil penalty has been set based on its documented inability to pay a greater amount and that, in the absence of a limited ability to pay, under the relevant EPA penalty policy, Defendant's civil penalty would have been significantly higher than the agreed-upon amount.

## VI.    INJUNCTIVE RELIEF

24.     <u>RRP Rule Compliance</u>: Defendant shall comply, and the Apex Parties shall ensure that all Additional Apex Renovation Firms comply, with the RRP Rule during Renovations of Target Housing, including, but not limited to, by:

a.      Having firm certification pursuant to 40 C.F.R. §§ 745.81(a)(2)(ii) and 745.89(a)(1);

b.      Assigning a Certified Renovator pursuant to 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(2) to all Renovations in Target Housing, and either having Certified Renovators perform all Renovation activities at Target Housing, or having other individuals performing Renovation activities at Target Housing trained by a Certified Renovator as provided in 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(1);

c.      Providing the lead hazard information pamphlet ("The Lead-Safe Certified Guide to Renovate Right") to the building, the owner or occupant of the unit being renovated, and/or each affected unit pursuant to 40 C.F.R. § 745.84(a), (b), and (c), obtaining a written acknowledgment of receipt of the pamphlet or obtaining a certificate of mailing at least 7 days prior to the renovation, and maintaining relevant records for three (3) years after the termination of the Consent Decree;

d.      Posting warning signs pursuant to 40 C.F.R. § 745.85(a);

e.      Containing the work area pursuant to 40 C.F.R. § 745.85(a)(2);

f.      Containing waste from renovation pursuant to 40 C.F.R. § 745.85(a)(4)(i);

g.      Performing post-renovation clean up pursuant to 40 C.F.R. § 745.85(a)(5); and

        h.      Maintaining and producing records pursuant to 40 C.F.R. §§ 745.86(a) and (b).

25.    <u>Renovation Checklist</u>: Defendant shall use, and the Apex Parties shall ensure that all Additional Apex Renovation Firms use, the Renovation Checklist attached to this Consent Decree as Exhibit C when performing Renovations of Target Housing.

26.    <u>Notification of Work</u>: Defendant shall notify, and the Apex Parties shall ensure that all Additional Apex Renovation Firms notify, EPA in writing in accordance with Paragraph 73:

        a.      Of each upcoming Renovation performed for compensation in Target Housing or child-occupied facilities by such entity at least 14 days before beginning the Renovation. The notification to EPA of a Renovation shall include, at a minimum: (a) the location of the Target Housing (the address) and the areas to be renovated (e.g., apartment number(s), common area(s), exterior); (b) the character of the Target Housing (e.g., single family domicile, multi-family apartment building, school building); (c) whether the Target Housing will be occupied at the time of the Renovation; (d) whether children reside at or frequent the Target Housing when not under Renovation; (e) the scope of work to be performed; (f) the full name, address, and telephone number of each contractor and/or subcontractor working on the Renovation, (g) the full name, address and telephone number of the individual who will be the on-site Certified Renovator for the work and a copy of his/her Renovator certificate, (h) the name, address, and telephone number of the Target Housing's owner or agent; (i) the scheduled dates of work; and (j) any test results supporting an exemption pursuant to 40 C.F.R. § 745.86(b)(1). Additionally, the notification will state that Apex or the Additional Apex Renovation Firm authorizes EPA to inspect at the Target Housing while the Renovation is occurring and will take all reasonable steps to secure access for EPA from the Target Housing's owner(s). If a Renovation-related change/ modification (e.g., change of Certified Renovator, scope of work, dates of work) becomes necessary, Apex or the Additional Apex Renovation Firm must either update their original notification to EPA for that Target Housing or send EPA a new notification promptly.

        b.      Of complaints they receive verbally or in writing from tenants, neighbors, the public, tenant organizations, and workers regarding work regulated by the RRP Rule within seven (7) days of receiving such complaints.

        c.      Of any official correspondence received from New York City agencies regarding the condition, handling, maintenance, disturbance, containment, or abatement of lead-based paint at the Target Housing within seven (7) days of receiving such correspondence.

27.     <u>Compliance Officer</u>: Apex shall designate, and the Apex Parties shall ensure that each Additional Apex Renovation Firm designates, a compliance officer (individually certified as a Renovator) as a point of contact to deal with lead safe work practice issues, monitor contractors' and subcontractors' compliance with RRP Rule requirements for that Firm, and respond to EPA with regard to any other issues that may arise with regard to the performance of a Renovation (the "Compliance Officer"). Apex and/or Additional Apex Renovation Firms may share a Compliance Officer.  No Renovation work shall be performed at any Target Housing unless a Compliance Officer has been designated and is available to EPA at any time Renovation is taking place.

28.     <u>Contractors and Subcontractors</u>: Apex shall hire, and the Apex Parties shall ensure that Additional Apex Renovation Firms hire, only certified firms as contractors and subcontractors for Renovations at Target Housing; memorialize contractor and subcontractor hiring in written contracts, copies of which shall be available to EPA upon request; and when utilizing contractors and subcontractors, for Renovations at Target Housing:

  a.      Require the contractors or subcontractors to use the Renovation Checklist. Regardless of the provision of any contract between the Apex and/or the Additional Apex Renovation Firm and their contractors or subcontractors, Apex and/or the Additional Apex Renovation Firm is responsible for the completion of the Renovation Checklist by its contractors or subcontractors for each Renovation of Target Housing.

  b.      Suspend any contractor or subcontractor with an expired RRP certification as soon as possible but not later than twenty-four (24) hours after learning of the expired certification. Apex and/or the Additional Apex Renovation Firm shall notify EPA in writing within seven (7) days of each suspension.

  c.      Suspend any contractor or subcontractor found to be in violation of the RRP Rule and cause their work to cease as soon as is feasible, but in no event more than twenty-four (24) hours after receiving credible notice of the violations.

  d.      Require contractors and subcontractors to certify in writing, prior to receiving payments beyond an initial deposit, that they have complied with the RRP requirements for the work they have performed or continue to perform and to submit records demonstrating compliance at the completion

of the work. The designated Compliance Officer shall review these records to confirm that they demonstrate compliance prior to Apex and/or the Additional Apex Renovation Firm making final payment. Apex and/or the Additional Apex Renovation Firms shall maintain and make available to EPA any such records for three (3) years after the termination of the Consent Decree.

Nothing in this paragraph relieves Apex, the Apex Parties, or any Additional Apex Renovation Firm of any legal responsibility it may have under applicable law for RRP violations during any Renovation of Target Housing performed by any contractor or subcontractor.

29.    Mitigation: Within one year of the Effective Date, Apex shall arrange for the following resident education, worker training sessions, and landlord/property manager information-distribution as mitigation of potential lead-based paint exposures at 76 Grove Street, 400 Manhattan Avenue, 1690 Longfellow Avenue, and 1700 Longfellow Avenue:

a.    <u>Resident Education on Lead-Based Paint Hazards</u>:  Apex shall host, for the residents of 76 Grove Street, 400 Manhattan Avenue, 1690 Longfellow Avenue, and 1700 Longfellow Avenue, resident education sessions free of charge, including a question-and-answer component, on the hazards of lead-based paint and methods of minimizing potential exposures.  For each resident education session, Apex shall:

(1)    If the owner of each property consents, hold the resident education session at the relevant properties, and, if not, hold the resident education session at a location convenient to the residents and provide notice to each resident by mail.

(2)    Ensure that the resident education session is led by a qualified trainer who is a certified renovator pursuant to the RRP Rule and who is

experienced in educating tenants on the hazards of lead-based paint and methods of minimizing potential exposures.

(3)     At least two months before each resident education session, seek and receive EPA approval of the content of the resident education session, including all written materials to be used (such materials to include FAQs and Answers and a URL for Apex's website), and of the trainer who will lead the educational session.

(4)     Post notices in locations reasonably designed to inform residents of the educational session at least one month before it takes place. For this purpose, Apex will seek permission from the building owner or manager to post notices by elevators in lobby and on all floors and, if permission is granted, will do so. Conduct the resident education session in a common space in the building, if available and consented to by the landlord, or in another location convenient to tenants.

(5)     Conduct the resident education session after working hours and provide refreshments and activities suitable for children (*e.g.*, movies, books, and age-appropriate snacks) designed to maximize attendance.

(6)     Distribute EPA's *Protect Your Family From Lead Paint in Your Home* pamphlet to attendees.  Make available copies of the pamphlet in Spanish, Arabic, French, Chinese, Russian, Somali, Tagalog and Vietnamese for attendees who prefer a copy in those

language. (Copies in these languages may be found
https://www.epa.gov/lead/protect-your-family-lead-your-home-english.)

(7)     Submit a written report to EPA, no later than 15 days after each resident education session, noting the number of attendees and a summary of the questions asked by the attendees and the answers given.

(8)     For at least one education session, record the session and post a recording of that session on Apex's website for at least one year, along with a translation of the entire session as requested by tenants.

b.     <u>Worker Training</u>:  Apex shall offer to the landlord at each of 76 Grove Street, 400 Manhattan Avenue, 1690 Longfellow Avenue, and 1700 Longfellow Avenue to provide a worker training session free of charge for maintenance staff at those buildings on lead-hazard reduction, including the basic elements of and differences between Subparts E and L of EPA's Lead-Based Paint Poisoning Prevention in Certain Residential Structures Rules (40 C.F.R. Part 745),  and common issues pertaining to the use of lead-safe work practices in day-to-day operations.  Apex will make best efforts to procure the owner of each property's consent to these training sessions.  If the owner of each property consents, for each worker training session, Apex shall:

(1)     Schedule each training session for a location and time convenient to workers at each building.

(2)     Ensure that each worker training session is conducted by individuals who are EPA-accredited training providers under the EPA's lead-safe certification program.

(3)     Seek and receive EPA approval of the content of the worker training session, including all written materials (including FAQs and Answers) to be used, and of the trainer who will lead the educational session.

(4)     Advise each attendee that the worker training session does not constitute certification as a RRP Certified Renovator or in any abatement discipline listed in 40 C.F.R. §§ 745.225 and 226, and that the attendee will need to obtain the appropriate certifications to perform certain work covered by the EPA lead-based paint rules.

(5)     Submit a written report to EPA, no later than 15 days after each worker education session, noting the number and names of attendees, the building address where each attendee works, the name of the training provider, and a summary of all questions asked by the attendees and the answers given.

c.     <u>Staffing</u>: For avoidance of doubt, Apex may use either in house staff or arrange for outside contractors to arrange for the sessions described in (a) and (b), provided that such person and sessions comply with the terms of (a) and (b).

d.   <u>Landlord/Property Manager Information Distribution</u>:

(1)   No later than 180 days after the Effective Date, Apex shall, at each of 76 Grove Street, 400 Manhattan Avenue, 1690 Longfellow Avenue, and 1700 Longfellow Avenue, distribute a fact sheet, approved by EPA, explaining what certifications are required for contractors to perform common building-maintenance and renovation work and explaining steps the landlord and/or property managers can take to ensure that their contractors are appropriately certified.

(2)   No later than 180 days after the Effective Date, Apex shall, at each of 76 Grove Street, 400 Manhattan Avenue, 1690 Longfellow Avenue, and 1700 Longfellow Avenue, distribute a fact sheet, approved by EPA, explaining what requirements are applicable to them when performing or engaging others on their behalf to perform common building-maintenance and renovation work and explaining steps the landlord and/or property managers can take to ensure that their employees or contractors are appropriately certified.

e.   <u>Website</u>:  For the duration of the Consent Decree, Apex will make available on its website: (1) the EPA-approved written materials referenced in Paragraph 29(a)(2); (2) the EPA-approved written materials referenced in Paragraph 29(b)(3); and (3) the fact sheets referenced in Paragraph 29(d).

30. <u>Mitigation (Certification)</u>:  No later than one year after the Effective Date, Apex, by a senior officer, shall certify to the United States under penalty of perjury that it has complied with Paragraph 29.

## VII.    REPORTING REQUIREMENTS

31. <u>Annual Reporting</u>: By January 31st of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVIII, the Apex Parties shall submit electronically by letter an annual report for the preceding calendar year that shall include a list of all Renovations of Target Housing that Apex or an Additional Apex Renovation Firm performed in the preceding year.  For each completed Renovation, the report shall include either: (1) a certification that a determination had been made that lead-based paint was not present on the components affected by the Renovation, records to support such a determination, as described in 40 C.F.R. §745.86(b)(1), and a contemporaneously completed Renovation Checklist; or (2) all of the following: (a) records reflecting delivery of the EPA pamphlet titled The Lead-Safe Certified Guide to Renovate Right: Important Lead Hazard Information for Families, Child Care Providers and Schools, as described in 40 C.F.R. §745.86(b)(2)-(5); (b) records demonstrating that the requirements of 40 C.F.R. §745.85 were followed, including the records set forth in 40 C.F.R. §745.86(b)(6); and (c) a contemporaneously completed Renovation Checklist.  To the extent that the Apex or an Additional Apex Renovation Firm did not perform any Renovation of Target Housing in the preceding calendar year, the report pursuant to this Paragraph shall so state.

32. The annual report described in Paragraph 31 shall also include a description of any violation of the requirements of this Consent Decree or the RRP Rule and an explanation of the cause of the violation and of the remedial steps taken, or to be taken, to minimize the effects of such violation and to prevent further violations.

33.     Whenever any violation of this Consent Decree or the RRP Rule or any other event affecting the Apex Parties' performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, the Apex Parties shall notify EPA orally or by email as soon as possible, but no later than 24 hours after the Apex Parties first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraphs.

34.     Each report submitted by the Apex Parties under this Section shall be signed by Brathwaite, Horsford, and an Apex official and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

35.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

36.     The reporting requirements of this Consent Decree do not relieve the Apex Parties or any Additional Apex Renovation Firm of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

37.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

38.     The Apex Parties shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

39.     <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $500 per Day for each Day that any payment is late.

40.     <u>Other Violations</u>.  The following stipulated penalties shall accrue per violation per Day for each violation by an Apex Party of a requirement set forth in Paragraph 11 or in Sections VI or VII:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

41.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

42.     An Apex Party shall pay any stipulated penalty within 30 Days of receiving the United States' written demand. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

43.     Stipulated penalties shall continue to accrue as provided in Paragraph 43, during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, the Apex Party shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, the Apex Party shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, the Apex Party shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

44.     An Apex Party shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 17 and with the confirmation notices required by Paragraph 18, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

45.     If an Apex Party fails to pay stipulated penalties according to the terms of this Consent Decree, the Apex Party shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for an Apex Party's failure to pay any stipulated penalties.

46.     The payment of penalties and interest, if any, shall not alter in any way an Apex Party's obligation to complete the performance of the requirements of this Consent Decree.

47.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for an Apex Party's violation of this Decree or applicable

law, including but not limited to an action against an Apex Party for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX.   FORCE MAJEURE

48.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Apex Parties, of any entity controlled by the Apex Parties, or of the Apex Parties' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the Apex Parties' best efforts to fulfill the obligation. The requirement that the Apex Parties exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring, and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include the Apex Parties' financial inability to perform any obligation under this Consent Decree.

49.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Apex Parties shall provide notice orally or by email to EPA within 72 hours of when the Apex Parties first knew that the event might cause a delay.  Within seven Days thereafter, the Apex Parties shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Apex Parties' rationale for attributing such delay to a force majeure event

if it intends to assert such a claim; and a statement as to whether, in the opinion of the Apex Parties, such event may cause or contribute to an endangerment to public health, welfare or the environment.  The Apex Parties shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude the Apex Parties from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  The Apex Parties shall be deemed to know of any circumstance of which the Apex Parties, any entity controlled by Defendant, or the Apex Parties' contractors or sub-contractors knew or should have known.

50.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify the Apex Parties in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

51.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Apex Parties in writing of its decision.

52.     If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, the Apex Parties shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted

23

under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 48 and 49.  If the Apex Parties carry this burden, the delay at issue shall be deemed not to be a violation by the Apex Parties of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.      DISPUTE RESOLUTION

53.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The Apex Parties' failure to seek resolution of a dispute under this Section shall preclude the Apex Parties from raising any such issue as a defense to an action by the United States to enforce any obligation of the Apex Parties arising under this Decree.

54.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when the Apex Parties send the United States and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.   The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 15 Days after the conclusion of the informal negotiation period, the Apex Parties invoke formal dispute resolution procedures as set forth below.

55.     Formal Dispute Resolution.    The Apex Parties shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending the United States and EPA a written Statement of Position regarding the matter in dispute.  The

Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the Apex Parties' position and any supporting documentation relied upon by the Apex Parties.

56.     The United States will send the Apex Parties its Statement of Position within 45 Days of receipt of the Apex Parties' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position is binding on the Apex Parties, unless the Apex Parties file a motion for judicial review of the dispute in accordance with the following Paragraph.

57.     <u>Judicial Dispute Resolution</u>.  The Apex Parties may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute.  The motion (a) must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 54, unless the Plaintiffs raise a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of the Apex Parties' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

58.     The United States shall respond to the Apex Parties' motion within the time period allowed by the Local Rules of this Court.  The Apex Parties may file a reply memorandum, to the extent permitted by the Local Rules.

59.     Standard of Review

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 55

25

pertaining to the adequacy of proposed measures to comply with the RRP Rule or any other items requiring approval by EPA under this Consent Decree, the adequacy of the performance of work undertaken pursuant to this Consent Decree, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, the Apex Parties shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.      <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 55, the Apex Parties shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

60.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Apex Parties under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 43.  If the Apex Parties do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.      INFORMATION COLLECTION AND RETENTION

61.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Target Housing at which the Apex Parties are performing renovations or where renovation records are kept, at all reasonable times, upon presentation of credentials, to:

a.      monitor the progress of activities required under this Consent Decree;

b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by the Apex Parties or their representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

      e.      assess the Apex Parties' compliance with this Consent Decree.

To the extent that such right of entry to Target Housing requires approval by the owner(s) of the Target Housing, the Apex Parties shall take all reasonable steps to obtain such approval prior to commencement of the Renovation.

      62.      Until three years after the termination of this Consent Decree, the Apex Parties shall retain, and shall instruct its contractors, subcontractors, and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors', subcontractors', or agents' possession or control, or that come into its or its contractors', subcontractors', or agents' possession or control, and that relate in any manner to the Apex Parties' performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, the Apex Parties shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

      63.      At the conclusion of the information-retention period provided in the preceding Paragraph, the Apex Parties shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, the Apex Parties shall deliver any such documents, records, or other information to EPA. The Apex Parties may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Apex Parties assert such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the

subject of the document, record, or information; and (f) the privilege asserted by the Apex Parties. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

64.     The Apex Parties may also assert that information required to be provided under this Section is protected as TSCA-specific Confidential Business Information ("CBI") under 15 U.S.C. § 2613 or as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, the Apex Parties shall follow the procedures set forth in the applicable statutory or regulatory provisions.

65.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of the Apex Parties to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

66.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action.

67.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 66.

68.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  The Apex Parties are responsible for achieving and

maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and the Apex Parties' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that the Apex Parties' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 15 U.S.C. § 2616, *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

69.    This Consent Decree does not limit or affect the rights of the Apex Parties or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against the Apex Parties, except as otherwise provided by law.

70.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

71.    The Apex Parties acknowledge that the United States has relied on the financial information provided by Defendant to the United States identified in Exhibit D, in entering into the Consent Decree.  Such representations and financial information are material to the United States' decision to agree to the terms contained herein.  Accordingly, the United States reserves its right to seek additional relief (including payment of additional civil penalty) judicially or administratively with respect to the matters contained in the Complaint if representations or financial information are materially inaccurate or contain material omissions, notwithstanding Paragraph 59.  Any such relief would be in addition to, and not in lieu of, the Apex Parties' agreements under this Consent Decree.  The Apex Parties waive any statute of limitations defense that may otherwise apply to such additional relief.  The Apex Parties reserve their defenses to such

additional relief except the defense that Paragraph 56 bars such relief and except any statute of limitations defense.

## XIII.   COSTS

72.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the Apex Parties.

## XIV.   NOTICES

73.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing, addressed as follows:

| | |
|---|---|
| As to the United States by email: | monica.folch@usdoj.gov<br>zachary.bannon@usdoj.gov<br>eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-12388 |
| As to DOJ by mail: | Monica Folch, AUSA<br>U.S. Attorney's Office<br>86 Chambers St., 3rd Floor<br>New York, NY 10007<br>Tel.:  (212) 637-6553 |
| | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-2-1-12388 |
| As to EPA by email: | howard.carl@epa.gov<br>somma.jerry@epa.gov |

As to the Apex Parties:          Robert Horsford
                                 86 Main Street, Suite 401
                                 Yonkers, NY 10701

74.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

75.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

76.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that the Apex Parties hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI.   RETENTION OF JURISDICTION

77.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

78.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

> The Court will not treat a modification of this Decree that is not approved by the Court as an order of the Court. While the parties may agree to modify their agreement within the scope of this provision, the Court does not authorize the parties to modify a court order without approval by the Court.

79.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 59, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

80.     After the Apex Parties have completed the requirements of Paragraph 29, maintained continuous satisfactory compliance with this Consent Decree for a period of five years, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, the Apex Parties may serve upon the United States a Request for Termination, stating that the Apex Parties have satisfied those requirements, together with all necessary supporting documentation.  If the Apex Parties elect to pay the full civil penalty early as provided in Paragraph 19, they may serve the Request for Termination at any time after having completed the requirements of Paragraph 29, maintained continuous satisfactory compliance with this Consent Decree for a period of three years, and having paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree.

81.     Following receipt by the United States of the Apex Parties' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the Apex Parties have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree

may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

82.     If the United States does not agree that the Decree may be terminated, the Apex Parties may invoke Dispute Resolution under Section X.  However, the Apex Parties shall not seek Dispute Resolution of any dispute regarding termination until 30 Days after service of its Request for Termination.

## XIX.   PUBLIC PARTICIPATION

83.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  The Apex Parties consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX.   SIGNATORIES/SERVICE

84.     Each undersigned representative of the Apex Parties and the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

85.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  The Apex Parties agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable

Local Rules of this Court including, but not limited to, service of a summons.  The Apex Parties

need not file an answer to the complaint in this action unless or until the Court expressly declines

to enter this Consent Decree.

## XXI.   INTEGRATION

86.     This Consent Decree, including deliverables that are subsequently approved

pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject

matter of the Decree and supersedes all prior representations, agreements and understandings,

whether oral or written, concerning the subject matter of the subject matter of the Decree herein.

## XXII.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

89.     For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the

Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance

of Paragraphs 12, 31-32, 34, 61-63 and Section VI is restitution, remediation, or required to come

into compliance with law.

## XXIII. FINAL JUDGMENT

90.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree

shall constitute a final judgment of the Court as to the United States and the Apex Parties.  The

Court finds that there is no just reason for delay and therefore enters this judgment as a final

judgment under Fed. R. Civ. P. 54 and 58.

The Clerk of Court is directed to terminate ECF No. 4 and to close the case.

SO ORDERED.

Dated and entered this 31ˢᵗ day of _January_, 2024_
 New York, NY

_Jennifer H. Rearden_
                          JENNIFER H. REARDEN
                          UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

| 9/5/2023 | | DAMIAN WILLIAMS |
| --- | --- | --- |
| Dated | | United States Attorney for the |
| | | Southern District of New York |

By: _____

MÓNICA P. FOLCH
ZACHARY BANNON
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel.:  (212) 637-6559/2728
Fax:  (212) 637-2786
Email:  monica.folch@usdoj.gov
zachary.bannon@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:


9/5/2023
_____

Dated

Simon, Paul

Digitally signed by Simon,
Paul
Date: 2023 09.05
08:52:33 -04'00'

_____

PAUL SIMON
Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
 New York, NY 10007-1866


CARL HOWARD
Assistant Regional Counsel
U.S. Environmental Protection Agency 290 Broadway
New York, NY 10007-1866

FOR APEX BUILDING COMPANY, INC.:

8/31/23

Dated

ROBERT HORSFORD
*President of Apex Building Company, Inc.*

8/31/23

Dated

KENNETH ABELL
Abell Eskew Landau LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
Tel.: (646) 970-7341
Email: kabell@aellaw.com

FOR HORSFORD AND BRATHWAITE:

8/31/23

Dated

ROBERT HORSFORD

8/31/2023

Dated

LEE BRATHWAITE

37

# Exhibit A
*Notice of Terms of Consent Decree for Contractors and Subcontractors*

# Notice of Terms of Consent Decree

<u>United States of America v. Apex Building Company, Inc.</u>, No. 23 Civ. _____
(S.D.N.Y.)

*Apex Building Company, Inc. is currently party to a consent decree that imposes obligations upon Apex Building Company, Inc. and any contractor or subcontractor retained to perform work for the renovation project in which you are serving as a contractor or subcontractor. Pursuant to the consent decree, the work you perform as a contractor or subcontractor to Apex Building Company, Inc. must be performed in conformity with the provisions set forth below.*

## INJUNCTIVE RELIEF

1. <u>RRP Rule Compliance</u>: Defendant shall comply, and the Apex Parties shall ensure that all Additional Apex Renovation Firms comply, with the RRP Rule during Renovations of Target Housing, including, but not limited to, by:

   a. Having firm certification pursuant to 40 C.F.R. §§ 745.81(a)(2)(ii) and 745.89(a)(1);

   b. Assigning a Certified Renovator pursuant to 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(2) to all Renovations in Target Housing, and either having Certified Renovators perform all Renovation activities at Target Housing, or having other individuals performing Renovation activities at Target Housing trained by a Certified Renovator as provided in 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(1);

   c. Providing the lead hazard information pamphlet ("The Lead-Safe Certified Guide to Renovate Right") to the building, the owner or occupant of the unit being renovated, and/or each affected unit pursuant to 40 C.F.R. § 745.84(a), (b), and (c), obtaining a written acknowledgment of receipt of the pamphlet or obtaining a certificate of mailing at least 7 days prior to the renovation, and maintaining relevant records for three (3) years after the termination of the Consent Decree;

   d. Posting warning signs pursuant to 40 C.F.R. § 745.85(a);

   e. Containing the work area pursuant to 40 C.F.R. § 745.85(a)(2);

f.   Containing waste from renovation pursuant to 40 C.F.R. § 745.85(a)(4);

g.   Performing post-renovation clean up pursuant to 40 C.F.R. § 745.85(a)(5); and

h.   Maintaining and producing records pursuant to 40 C.F.R. §§ 745.86(a) and (b).

2.   <u>Renovation Checklist</u>: Defendant shall use, and the Apex Parties shall ensure that all Additional Apex Renovation Firms use, the Renovation Checklist attached to this Consent Decree as Exhibit C when performing Renovations of Target Housing.

3.   <u>Notification of Work</u>: Defendant shall notify, and the Apex Parties shall ensure that all Additional Apex Renovation Firms notify, EPA in writing in accordance with Paragraph 74:

a.   Of each upcoming Renovation performed for compensation in Target Housing or child-occupied facilities by such entity at least 14 days before beginning the Renovation. The notification to EPA of a Renovation shall include, at a minimum: (a) the location of the Target Housing (the address) and the areas to be renovated (e.g., apartment number(s), common area(s), exterior); (b) the character of the Target Housing (e.g., single family domicile, multi-family apartment building, school building); (c) whether the Target Housing will be occupied at the time of the Renovation; (d) whether children reside at or frequent the Target Housing when not under Renovation; (e) the scope of work to be performed; (f) the full name, address, and telephone number of each contractor and/or subcontractor working on the Renovation, (g) the full name, address and telephone number of the individual who will be the on-site Certified Renovator for the work and a copy of his/her Renovator certificate, (h) the name, address, and telephone number of the Target Housing's owner or agent; (i) the scheduled dates of work; and (j) any test results supporting an exemption pursuant to 40 C.F.R. § 745.86(b)(1).  Additionally, the notification will state that Apex or the Additional Apex Renovation Firm authorizes EPA to inspect at the Target Housing while the Renovation is occurring and will take all reasonable steps to secure access for EPA from the Target Housing's owner(s).   If a Renovation-related change/ modification (e.g., change of Certified Renovator, scope of work, dates of work) becomes necessary, Apex or the Additional Apex Renovation Firm must either update their original notification to

EPA for that Target Housing or send EPA a new notification promptly.

    b.    Of complaints they receive verbally or in writing from tenants, neighbors, the public, tenant organizations, and workers regarding work regulated by the RRP Rule within seven (7) days of receiving such complaints.

    c.    Of any official correspondence received from New York City agencies regarding the condition, handling, maintenance, disturbance, containment, or abatement of lead-based paint at the Target Housing within seven (7) days of receiving such correspondence.

4.    <u>Compliance Officer</u>: Apex shall designate, and the Apex Parties shall ensure that each Additional Apex Renovation Firm designates, a compliance officer (individually certified as a Renovator) as a point of contact to deal with lead safe work practice issues, monitor contractors' and subcontractors' compliance with RRP Rule requirements for that Firm, and respond to EPA with regard to any other issues that may arise with regard to the performance of a Renovation (the "Compliance Officer"). Apex and/or Additional Apex Renovation Firms may share a Compliance Officer. No Renovation work shall be performed at any Target Housing unless a Compliance Officer has been designated and is available to EPA at any time Renovation is taking place.

5.    <u>Contractors and Subcontractors</u>: Apex shall hire, and the Apex Parties shall ensure that Additional Apex Renovation Firms hire, only certified firms as contractors and subcontractors for Renovations at Target Housing; memorialize contractor and subcontractor hiring in written contracts, copies of which shall be available to EPA upon request; and when utilizing contractors and subcontractors, for Renovations at Target Housing:

    a.    Require the contractors or subcontractors to use the Renovation Checklist. Regardless of the provision of any contract between the Apex and/or the Additional Apex Renovation Firm and their

contractors or subcontractors, Apex and/or the Additional Apex Renovation Firm is responsible for the completion of the Renovation Checklist by its contractors or subcontractors for each Renovation of Target Housing.

b.   Suspend any contractor or subcontractor with an expired RRP certification as soon as possible but not later than twenty-four (24) hours after learning of the expired certification. Apex and/or the Additional Apex Renovation Firm shall notify EPA in writing within seven (7) days of each suspension.

c.   Suspend any contractor or subcontractor found to be in violation of the RRP Rule and cause their work to cease as soon as is feasible, but in no event more than twenty-four (24) hours after receiving credible notice of the violations.

d.   Require contractors and subcontractors to certify in writing, prior to receiving payments beyond an initial deposit, that they have complied with the RRP requirements for the work they have performed or continue to perform and to submit records demonstrating compliance at the completion of the work. The designated Compliance Officer shall review these records to confirm that they demonstrate compliance prior to Apex and/or the Additional Apex Renovation Firm making final payment. Apex and/or the Additional Apex Renovation Firms shall maintain and make available to EPA any such records for three (3) years after the termination of the Consent Decree.

Nothing in this paragraph relieves Apex, the Apex Parties, or any Additional Apex Renovation Firm of any legal responsibility it may have under applicable law for RRP violations during any Renovation of Target Housing performed by any contractor or subcontractor.

## Exhibit B – Civil Penalty Payment Schedule

| | Deadline for payment | Principle w/o interest | Interest | Total Installment Payment | Unpaid Balance |
|---|---|---|---|---|---|
| 30 | Days after entry | 121,341.20 | 1,745.32 | 123,086.52 | 485,364.80 |
| 1 | Year after entry | 121,341.20 | 15,591.51 | 136,932.71 | 364,023.60 |
| 2 | Years after entry | 121,341.20 | 12,740.83 | 134,082.03 | 242,682.40 |
| 3 | Years after entry | 121,341.20 | 8,493.88 | 129,835.08 | 121,341.20 |
| 4 | Years after entry | 121,341.20 | 4,246.94 | 125,588.14 | 0.00 |

# Exhibit C

## CHECKLIST FOR RENOVATIONS REGULATED BY THE LEAD RENOVATION, REPAIR, AND PAINTING (RRP) RULE

## CHECKLIST FOR RENOVATIONS
## REGULATED BY THE RRP RULE

### General Project Information:

Property Address: _____

City                State        Zip

Contractor/subcontractor firm name and certification number (copy of the firm certificate must be on file with the Defendants):

_____

Firm Name                                    Certification Number

Assigned certified renovator name & certification number (copy of training certificate must be available on the work site and attached to this checklist):

_____

Renovator Name                               Certification Number

Brief description of Renovation Project (include painted surfaces disturbed and estimated size):

Did the contractor/subcontractor obtain a written determination from a certified inspector or risk assessor that lead-based paint was not present on the components affected by the renovation?

___ **Yes and a copy of the determination is attached to this checklist. (*Form is COMPLETE. Sign Certification on last page.*)**

___ **No** *(Continue to Next Section, "Lead Testing Information")*

## NOTIFICATION CHECKLIST FOR RENOVATIONS
## REGULATED BY THE RRP RULE

### LEAD TESTING INFORMATION:

Were EPA or applicable state recognized lead test kits used by certified renovator on each and every component (for example, each window to be replaced must be tested unless it is assumed to have lead-based paint) to determine whether lead was present on components affected by renovation?

\_\_\_ Yes          \_\_\_ N/A

Identify workers and kits used and describe components tested, sampling locations and results below. Follow the lead test kit directions completely when testing components.  Document paint chip sampling using the template on the following page and attach any laboratory results.

| Certified Renovator Name | Certification Number |
|---|---|
|  |  |
|  |  |
|  |  |

*Attach additional sheets as needed.*

| Test Kit Manufacturer and Model | Date of Testing | Component and Location Tested | Result |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*Attach additional sheets as needed.*

***Note -- Each window to be replaced must be tested unless it is assumed to have lead-based paint***

**For each sample collected, fill out all of the following information:**
Sample Identifier: _____
Sample Collector Name: _____
Sampling Location: _____
Sampling site description: _____ Date of Collection: \_\_\_\_/\_\_\_\_\_/_____
Sample Dimensions (cm): _____ Calculate Sample Area (cm²):_____
*NLLAP-recognized entity and location: _____
 Submission date: \_\_\_\_/\_\_\_\_\_/_____ Results: _____ Result Date: \_\_\_\_/\_\_\_\_\_/\_\_\_\_\_

Attach additional sheets as necessary.
*National Lead Laboratory Accreditation Program

## NOTIFICATION CHECKLIST FOR RENOVATIONS
## REGULATED BY THE RRP RULE

**General Information**
Name of Property Owner:_____
Address:_____
City:_____ State: _____ Zip code: _____ Contact #: (___) ____- _____
Email: _____

**Renovation Information**
Renovation Address: _____ Unit #: _____
City: _____ State: _____ Zip code: _____
Certified Firm Name: _____
Address: _____
City: _____ State: _____ Zip code: _____ Contact #: (___) ____- _____
Email: _____
Certified Renovator Name: _____
Date Certified _____/ _____/_____

**For each sample collected, fill out all of the following information:**
Sample Identifier: _____
Sample Collector Name: _____
Sampling Location: _____
Sampling site description: _____ Date of Collection: ____/_____/_____
Sample Dimensions (cm): _____Calculate Sample Area (cm²):_____
*NLLAP-recognized entity and location: _____
Submission date: ____/_____/_____ Results: _____ Result Date: ____/_____/_____

Attach additional sheets as necessary.
*National Lead Laboratory Accreditation Program

Was lead-based paint determined to be present on the components affected by the renovation?

___ **Yes** (*Continue to Next Section, "Notification, Work Practices, and Recordkeeping"*).

___ Presumed to be present on the components affected by the renovation (*Continue to Next Section, "Notification, Work Practices, and Recordkeeping"*).

___ **No** (*Form is COMPLETE, sign Certification on last page.*)

## CHECKLIST FOR RENOVATIONS
## REGULATED BY THE RRP RULE

### NOTIFICATION, WORK PRACTICES, AND RECORDKEEPING:

**(40 C.F.R. Parts §§ 745.84-745.86 or applicable state program)**

Please acknowledge one of the following:

☐ Signed and dated acknowledgments of receipt of the Renovate Right pamphlet from, as applicable: owners and, if not owner-occupied, adult occupants of dwelling units, owners of multi-unit housing for renovations in common areas; and owners and adult representatives of child-occupied facilities are attached to this checklist;

**OR**

☐ Certificates of mailing of the Renovate Right pamphlet to the following, as applicable: owners and, if not owner-occupied, adult occupants of dwelling units; owners of multi-unit housing for renovations in common areas; and owners and adult representatives of child-occupied facilities are attached to this checklist.

**OR**

☐ Certificates of attempted delivery of the Renovate Right pamphlet to adult occupants of dwelling units or adult representatives of child-occupied facilities are attached to this checklist.

Comments on pamphlet delivery (*i.e.*, obstacles encountered and how they were addressed):

_____

_____

_____

If the Renovation Project involved a common area of a multi-unit building, was a signed statement describing the steps performed to notify all occupants of multi-unit housing of the renovation activities, to provide the Renovate Right pamphlet to all occupants, and to inform of any changes to the renovation activities, obtained and attached?

___ **Yes**          ___ **N/A**

If the Renovation Project was performed in a child-occupied facility, was a signed statement describing the steps performed to notify all parents and guardians of children using child-occupied facilities of the renovation activities, to provide the Renovate Right pamphlet, and to provide a copy of the records showing compliance with the RRP Rule and any dust clearance sampling reports obtained and attached?

___ **Yes**          ___ **N/A**

Name(s) of dust sampling technician, inspector, or risk assessor, if used (attach copies of their certification to this checklist):

_____

_____

_____

# CHECKLIST FOR RENOVATIONS
# REGULATED BY THE RRP RULE

## NOTIFICATION, WORK PRACTICES, AND RECORDKEEPING:  continued

If applicable, certified renovator provided training to workers on (check all that apply):

☐ Posting warning signs      ☐ Setting up plastic containment barriers

☐ Maintaining containment      ☐ Avoiding spread of dust to adjacent areas

☐ Waste handling      ☐ Post-renovation cleaning


List Names of workers trained (attach a copy of any records documenting which elements were taught to each worker):

_____

_____

_____

_____


Renovator posted signs defining work area to keep others out of renovation work area.  Warning signs were posted at entrance to work area.

___ Yes          ___ N/A


Work area contained to prevent spread of dust and debris? (Check all that apply)

(INTERIOR)

☐ All objects in the work area were removed or covered (interiors).

☐ HVAC ducts in the work area were closed and covered (interiors).

☐ Windows and doors in the work area were closed and sealed (interiors).

☐ Floor surfaces covered by plastic extending 6 feet from work area (interiors).

☐ Doors in the work area were closed and sealed (interiors).

☐ Doors that must be used in the work area were covered to allow passage but prevent spread of dust (interiors).

☐ Floors in the work area were covered with taped-down plastic (interiors).

(EXTERIOR)

☐ Windows in and within 20 feet of the work area were closed (exteriors).

☐ Doors in and within 20 feet of the work area were closed and sealed (exteriors).

☐ Ground was covered by plastic extending 10 feet from work area - plastic anchored to building and weighed down by heavy objects (exteriors).

☐ If necessary, vertical containment was installed if property line prevents 10 feet of plastic ground cover, or if necessary to prevent migration of dust and debris to adjacent property (exteriors).

## CHECKLIST FOR RENOVATIONS
## REGULATED BY THE RRP RULE


### <u>NOTIFICATION, WORK PRACTICES, AND RECORDKEEPING</u>:  continued

**Please acknowledge the following if applicable:**
None of the prohibited and restricted work practices was employed.

**___ Yes          ___ N/A**

Waste was contained on-site and while being transported off-site.

**___ Yes          ___ N/A**

Work site was properly cleaned after renovation:

**___ Yes          ___ N/A**


☐ All chips and debris were picked up, protective sheeting misted, folded dirty side inward, and taped for removal;

☐ Plastic sheeting misted, folded dirty side inward, and taped for removal; and

☐ Work area surfaces, walls, and objects were cleaned using HEPA vacuum and/or wet-cloths or mops (interiors).


Certified renovator performed post-renovation cleaning verification. Describe results, including the number of wet and dry cloths used:

_____
_____
_____
_____


**OR**


If dust clearance testing was performed instead of cleaning verification, the sample results were below clearance standards and a copy of the report was provided to property owners and, if not owner-occupied, adult occupants of residential dwellings or adult representatives of child-occupied facilities and posted in common areas of any multi-unit housing. A copy of the results is attached to this checklist.

**___ Yes          ___ N/A**


If the renovation is an emergency renovation under the RRP Rule, describe the nature of the emergency and document the provisions of the RRP Rule that were not followed:

_____
_____
_____
_____

## CHECKLIST FOR RENOVATIONS
## REGULATED BY THE RRP RULE

### *CONTRACTOR/SUBCONTRACTOR CERTIFICATION*

*I, the undersigned contractor/subcontractor, certify under penalty of law that the above information is true and complete, and do hereby certify that I have complied with all requirements of the Lead Renovation, Repair, and Painting Rule ("RRP Rule"), 40 C.F.R. § 745.80, et seq., and/or any applicable state laws or program regulating lead-based paint safe work practices, including compliance with all information distribution, notice requirements and work practice standards in performing this Renovation Project.  I certify that I have provided the occupants (if any) of the Property to be Renovated, with all documentation required to be supplied under the RRP Rule and/or state program, shall retain all records required by law for at least 3 years or longer if required by state law, and shall provide copies to EPA of all the records required to be retained by the RRP Rule or applicable state program upon request. I have provided the Defendants with a completed copy of this Renovation Recordkeeping Checklist and all associated documentation to support its contents.*

_____        _____

**Contractor/subcontractor Name and Title**            **Date**

_____        _____

**Signature of Authorized Officer**                              **Date**

_____

**Print Name of Authorized Officer**

_____

**Title**

## **Exhibit D – Ability-to-Pay Documentation**

*In determining Defendant's ability to pay a civil penalty, the United States of America relied upon the following documentation provided by Defendant:*

- The United States Department of Justice's *Financial Statement for Business* completed by Defendant on April 1, 2022.

- Defendant's Form 1120 U.S. Corporation Income Tax Return for Tax Years 2017, 2018, 2019, and 2020.

- Defendant's Consolidated Financial Statements from 2017, 2018, 2019, and 2020.

- Defendant's management fees from 2017, 2018, 2019, and 2020.

- Defendant's bank statements for January, February, and March of 2022.

- Defendant's Responses to Questions Posed by the United States dated July 12, 2022.

- Defendant's Statement of Income dated December 31, 2021.

- Defendant's Balance Sheet dated December 31, 2021.

- Defendant's 2022-2023 Budget Forecasts.

- A spreadsheet of Defendant's affiliated entities produced on July 22, 2022.

- A comparison of Defendant's advances to affiliates from 2020 to 2021.